## Ruhe Trust

*William S. Hudders* and *William B. Butz*, for trustees.

*David G. Welty*, guardian ad litem.

GEARHART, P. J., April 2, 1959.—The Lehigh Valley Trust Company and William Edward Ruhe, trustees under the last will and testament of William F. Ruhe, deceased, have presented a petition for the determination of a disagreement between them arising out of the last will and testament of William F. Ruhe, deceased. William F. Ruhe died August 16, 1953, leaving a last will and testament dated April 10, 1951.

The disagreement has arisen between the corporate trustee and the individual trustee as to their powers and duties in regard to the nonlegal investments now held in the two trusts under testator's will. The investments were originally made by testator and were

distributed to the trustees on the adjudication of the first and final account of petitioners as executors.

The prayer of the petition states: "Wherefore, your petitioners invoke the jurisdiction of this Honorable Court under the provisions of Section 949(b) of the Fiduciaries Act of 1949, 20 P.S. 320. 949(b) to resolve the disagreement between them by construing and interpreting the meaning of paragraph fourteen (14) of the last will and testament of the testator."

Section 949(b) of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.949(b), provides:

"When no majority. When a dispute shall arise among trustees as to the exercise or non-exercise of any of their powers and there shall be no agreement of a majority of them, unless otherwise provided by the trust instrument, the court, upon petition filed by any of the trustees or by any party in interest, aided if necessary by the report of a master, in its discretion, may direct the exercise or non-exercise of the power as the court shall deem for the best interest of the trust."

The fourteenth paragraph of the will, which the court is asked to interpret, is as follows:

"I also authorize them to take and hold, in either of their respective fiduciary capacities, any non-legal securities which I may own at the time of my death and to continue to hold them until a favorable opportunity offers for liquidation. All other investments in my estate shall be made in good and sufficient legal securities, provided, however, that in no event shall the trustees invest any funds of my estate in a mortgage pool or pools."

Basically, the dispute between the corporate trustee represented by Mr. William B. Butz and the individual trustee represented by Mr. William Hudders, is that the corporate trustee believes that under the

will it is their duty to sell when a favorable market presents itself. They would sell some of the stock now.

The individual trustee on the other hand desires to retain the stock and takes the position that they have the right to hold the stock indefinitely so long as they are watchful, and exercise due care and prudence in retaining the stock.

The petition avers that the nonlegal investments in the marital trust as of December 9, 1958, have increased in value in the amount of $28,275.70 and that the overall increase in the assets of the nonmarital trust was $23,733.79.

The interpretation of the fourteenth paragraph of the will gives us no trouble. Testator, in reasonably clear language, authorized the trustees to hold non-legal securities which he owned at the time of his death, and directed the trustees to hold them "until a favorable opportunity offers for liquidation." Clearly, he did not give the trustees an unqualified right to hold under any circumstances. He qualified the right to retain the nonlegal securities "until a favorable opportunity offers for liquidation." Testator gave the trustees some discretion in the matter. He did not intend his trustees to sell his nonlegal securities in an unfavorable market at a loss. He directed them, in plain language, to hold the securities "until a favorable opportunity offers for liquidation."

The question of whether a favorable opportunity has offered itself for liquidation is not now before us. No loss has been incurred. The question whether the retention, under all these circumstances and the words of the will represent the exercise of common skill, common prudence and common caution, can be determined under all the circumstances when and if a loss occurs and a dissatisfied legatee attempts to surcharge the trustee. See Mereto Estate, 373 Pa. 466, 468, 469, for the standard of management required of a trustee.

The purpose of section 949(*b*) of the Fiduciaries Act of 1949 is to provide a method of disposing of disputed questions when there is a deadlock between the trustees as to their powers under the will. In that event the court is to resolve the difference as it deems for the best interest of the trust. The dispute between the trustees has been brought to the doorsteps of the court under section 949(*b*). Here we have the anomalous situation of Mr. Hudders, counsel for the individual trustee, requesting the court not to resolve the matter as provided for in section 949(*b*) but requests only an interpretation of the words of the will, which we have already done. In the spirit of accommodation and under the assumption that the trustees will now resolve their differences, no definitive order will be entered.

Nonetheless, the court makes the observation that, if called upon to decide whether to retain or sell the nonlegal securities, it would have no trouble in arriving at a conclusion. It would seem that to provide safety and conservation of the corpus, part of the nonlegal stock should be sold. Since we have been asked to refrain from ruling on this question directly, the matter of retention is one entirely for the trustees in the exercise of their limited discretion: Losa Estate, 86 D. & C. 572.